UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JONI ANDERSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LIBERTY MUTUAL LONG TERM DISABILITY PLAN; LIBERTY LIFE ASSURANCE COMPANY OF BOSTON; and LIBERTY MUTUAL INSURANCE COMPANY,<br><br>　　　　Defendants. | Case No. C15-00145RSM<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT UNDER FRCP 52 AND DENYING DEFENDANTS' CROSS MOTION FOR JUDGMENT UNDER FRCP 52 |

## I.　　INTRODUCTION

This matter comes before the Court on Cross Motions filed by Plaintiff Joni Anderson and Defendants Liberty Mutual Long Term Disability Plan, Liberty Life Assurance Company Of Boston ("LLACOB"), and Liberty Mutual Insurance Company ("Liberty Mutual"), seeking a final judgment from this Court under Federal Rule of Civil Procedure 52 based on an administrative record created in an underlying Employee Retirement Income Security Act ("ERISA") dispute. Dkt. ##15 and 24. Plaintiff brings this action under ERISA, 29 U.S.C. § 1001 *et seq.* to recover long-term disability ("LTD") benefits under the Liberty Mutual Long-Term Disability Plan ("Plan"). Ms. Anderson, who worked as a Books Transfer Account Manager for a Liberty Mutual company, argues that she is totally disabled under the terms of

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANTS' CROSS
MOTION FOR JUDGMENT UNDER FRCP 52- 1

the Plan due to vertigo, dizziness, disequilibrium (or dysequilibrium), and related symptoms. Defendants argue that the medical evidence and post-diagnosis surveillance do not establish that Ms. Anderson is totally disabled. For the reasons set forth below, the Court concludes that Ms. Anderson is entitled to long-term disability benefits under the terms of the Plan. The Court remands to LLACOB the issue of extending benefits beyond the 18-month period prescribed for "own occupation" benefits.

## II.   PROCEDURAL ISSUES

Before turning to the merits of the parties' arguments, the Court must determine whether it is appropriate to resolve this case on the parties' cross motions for judgment under Rule 52 (Dkt. ##22-1 and 24) as opposed to summary judgment under Rule 56. The answer depends on what standard of review the court applies. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S. Ct. 948 (1989) ("ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations."). The parties here have simplified the matter by stipulating to *de novo* review. Dkt. ##22-1 at 14; 24 at 5. The court accepts the parties' stipulation and reviews the record *de novo*. *See Rorabaugh v. Cont'l Cas. Co.*, 321 Fed. App'x 708, 709 (9th Cir. 2009) (court may accept parties' stipulation to *de novo* review).

Where review is under the *de novo* standard, the Ninth Circuit has not definitively stated the appropriate vehicle for resolution of an ERISA benefits claim. The *de novo* standard requires the court to make findings of fact and weigh the evidence. *See Walker v. Am. Home Shield Long Term Disability Plan*, 180 F.3d 1065, 1069 (9th Cir. 1999) (*de novo* review applies to plan administrator's factual findings as well as plan interpretation). Typically, a request to reach judgment prior to trial would be made under a Rule 56 motion for summary judgment, however under such a motion the court is forbidden to make factual findings or weigh

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANTS' CROSS
MOTION FOR JUDGMENT UNDER FRCP 52- 2

evidence. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Instead, the parties here propose the Court conduct a trial on the administrative record under Rule 52.

This procedure is outlined in *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (noting that "the district court may try the case on the record that the administrator had before it"). In a trial on the administrative record:

> The district judge will be asking a different question as he reads the evidence, not whether there is a genuine issue of material fact, but instead whether [the plaintiff] is disabled within the terms of the policy. In a trial on the record, but not on summary judgment, the judge can evaluate the persuasiveness of conflicting testimony and decide which is more likely true.

*Id*. Thus, when applying the *de novo* standard in an ERISA benefits case, a trial on the administrative record, which permits the court to make factual findings, evaluate credibility, and weigh evidence, appears to be the appropriate proceeding to resolve the dispute. *See Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir. 1994) (on *de novo* review of an ERISA benefits claim, the "appropriate proceeding[] . . . is a bench trial and not the disposition of a summary judgment motion"); *Lee v. Kaiser Found. Health Plan Long Term Disability Plan*, 812 F. Supp. 2d 1027, 1032 (N.D. Cal. 2011) ("*De novo* review on ERISA benefits claims is typically conducted as a bench trial under Rule 52"); *but see Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 517 (1st Cir. 2005) ("When there is no dispute over plan interpretation, the use of summary judgment . . . is proper regardless of whether our review of the ERISA decision maker's decision is *de novo* or deferential.").

Given the above law, and the clear intent of the parties, the Court elects to resolve the parties' dispute in a bench trial on the administrative record rather than on summary judgment. Therefore, the court issues the following findings and conclusions, pursuant to Rule 52.

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANTS' CROSS
MOTION FOR JUDGMENT UNDER FRCP 52- 3

## III.     FINDINGS OF FACT

1. Plaintiff Joni Anderson has worked for Safeco, a subsidiary of Liberty Mutual, in various roles since 2000. R1045-46. Ms. Anderson began her most recent job as a Books Transfer Account Manager in June of 2012. *Id.* In this position, Ms. Anderson worked 7.5 hours a day and 37.5 hours a week. R01389. This job requires near constant use of a computer in an office setting. *Id.*; R00408.

2. Ms. Anderson was offered Short Term Disability ("STD") and Long Term Disability ("LTD") benefits through plans administered by the Liberty Life Assurance Company of Boston ("LLACOB").[1] R01362; R01068-69. As a full time employee working a minimum of 37.5 hours per week, Ms. Anderson was eligible for LTD benefits. R00003.

3. Under the STD Plan, benefits are awarded based on an employee meeting the following definition of disability: "…inability to perform all the material and substantial duties of his or her Own Job at his or her pre-disability regular schedule because of injury or sickness." R01332. These benefits are only available for a short term: 182 days. R01068.

4. Under the LTD Plan, benefits are awarded beyond the 182-day window. Under this plan, "Disabled" is defined as when the employee "as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation." R00007. "Sickness" is defined as "illness, disease, pregnancy or complications of pregnancy." R00010. The Plan defines "Material and Substantial Duties" as "responsibilities that are normally required to perform the Covered Person's Own

---

[1] LLACOB is a subsidiary of Liberty Mutual, among other companies. Dkt. #5.

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANTS' CROSS
MOTION FOR JUDGMENT UNDER FRCP 52- 4

Occupation, or any other occupation, and cannot be reasonably eliminated or modified." R00009.

5. LTD Plan benefits are limited to 18 months unless the employee can show that she "is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." R00004; R00007. "Any Occupation" is defined as "any occupation that the [employee] is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity." R00005.

6. In February of 2012, Ms. Anderson suffered from an episode of vertigo and dizziness and saw her primary care physician, Whitney McClincy, M.D. R01369. She was diagnosed with Meniere's disease. *Id.* Her symptoms continued intermittently, but mildly, until roughly November of 2012, when she noticed a worsening of these symptoms and lightheadedness, nausea, fatigue, and disequilibrium. *Id.*

7. In December of 2012, Ms. Anderson's symptoms were so severe she did not feel she could go to work. R01369. Records show Ms. Anderson ceased work on December 11, 2012. R00077. When evaluated by Dr. McClincy on December 13, 2012, Ms. Anderson reported "severe fatigue," "frequent nausea," "new symptom of ears ringing," and "a sense of motion that is fairly short-lived." R01369. Ms. Anderson reported that she tried working from home but "just can't accomplish what needs to be done due to her symptoms." *Id.*

8. On December 18, 2012, Ms. Anderson applied for STD benefits, which LLACOB granted on January 17, 2013. R1394; R1362. In granting these benefits, LLACOB specifically found that Ms. Anderson was "disabled" starting on December 11, 2012. R1362.

9. In January and February of 2013 Ms. Anderson saw an otolaryngologist, Jay Rubenstein, M.D. R01256-58; R1252. Dr. Rubenstein conducted vestibular testing, which was "suggestive of migraine and with a variety of disconnected abnormalities." R01252. Dr. Rubenstein prescribed Topamax, but it worsened Ms. Anderson's symptoms and was discontinued. R1250-52.

10. In February of 2013, Ms. Anderson was advised by her doctor that she could try working from home, Safeco accepted this proposal, and her STD benefits ceased. R00061.

11. Ms. Anderson's symptoms continued. She was referred to a neurologist, Michael Chun, M.D., who evaluated Ms. Anderson on February 28, 2013, and took several MRI scans. R01286-94. Although the MRI scans showed no clear etiology for her condition, the neurologist wrote "Examination clearly abnormal, rotary nystagmus.... Probably not migraine variant. Pursing (sic) further images." R1294. Dr. Chun evaluated her again on March 8, 2013, and noted a suspected vestibular disorder. R1295.

12. In May of 2013, Ms. Anderson was seen by a neuro-opthalmologist, Eugene May, M.D. R01249. Dr. May conducted an exam and noted "she has downbeating nystagmus… which is probably not congenital in etiology and probably not related to her amblyopia. I suspect that the downbeating nystagmus is an indication of whatever has caused her to feel unsteady." R01330. Dr. May then proceeded to discuss possible etiologies with Ms. Anderson and recommended "watchful waiting." *Id.*

13. On May 13, 2013, Ms. Anderson met with Dr. McClincy and reported constant fatigue, unpredictable flares of severe vertigo, and occasional nausea. R01305.

14. On June 14, 2013, Dr. Chun diagnosed "presumed chronic vestibular disorder." R01309.

15. On July 30, 2013, Ms. Anderson reapplied for STD benefits. R00060. As a part of this application, Dr. McClincy completed a "Restrictions Form" on August 12, 2013, stating that Ms. Anderson was "able to perform work activities – telephone calls, computer work, in-person meetings, travel – on a very limited basis, if at all. Symptoms vary in severity & timing…. Episodic vertigo causes nausea/vomiting [and] inability to sit/stand upright for variable periods of time." R01334. This application was denied by LLACOB on September 10, 2013. R01332. Ms. Anderson appealed this decision, which was again denied by LLACOB on October 14, 2013. R01279-80; R01266-70. Ms. Anderson appealed LLACOB's final decision to U.S. District Court for the Western District of Washington, Case No. C13-02298MJP, ultimately resulting in a settlement between the parties. *See* Dkt. #15 at 9; R00276-77.

16. On October 25, 2013, a letter from "Safeco Insurance" was sent to Dr. McClincy asking for a description of Ms. Anderson's impairment. R00512-14. Dr. McClincy's handwritten response indicates that Ms. Anderson's condition substantially limited a major life activity, including her ability to "use a computer," "read/write", "ambulate," and "drive." R00513. When asked if the impairment prevented Ms. Anderson from doing her job, Dr. McClincy checked the "yes" box and wrote "when symptoms are present." *Id.* When asked what accommodation Safeco could offer Ms. Anderson, Dr. McClincy wrote, "There is no specific accommodation as she <u>cannot work</u> when [symptoms are] present [and symptoms] are currently fluctuating in severity/timing." *Id.* (emphasis in original). Dr. McClincy concludes with "The [patient] is currently unable to reliably perform her essential job functions." R00514.

17. On December 11, 2013, Ms. Anderson applied for LTD benefits. R00054.

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANTS' CROSS
MOTION FOR JUDGMENT UNDER FRCP 52- 7

18. On January 2, 2014, Ms. Anderson filled out an "Activities Questionnaire" sent to her by LLACOB. R01048-50. Ms. Anderson informed LLACOB that she could walk "20-30 minutes if symptom free," that she could run errands "every day or two, depends on symptoms and if I can drive or stand," and that these errands include "going to Dr. appts, groceries." R01048. The questionnaire asks if Ms. Anderson could work in her garden, work on her house, or wash her car, and for each Ms. Anderson answered both yes and no, "not when vertigo/dizziness present," "all depend on daily symptoms." R01049.

19. LLACOB retained Ahmed Robbie, M.D., to review Ms. Anderson's medical records and provide a report. Dr. Robbie's February 28, 2014, report concludes that "[t]he Claimant has diagnoses of vertigo, dizziness, imbalance, dysequilibrium…. [and] amblyopia." R00616. The report included a summary of a "peer-to-peer discussion" Dr. Robbie had with Dr. McClincy where Dr. McClincy stated "[Ms. Anderson's] symptoms seem to be legitimate." R00615. The report contains no evidence that Ms. Anderson's symptoms are fabricated or otherwise not present. Nevertheless, Dr. Robbie concludes "[h]er symptoms are merely subjective in nature. There are no objective findings of neurological impairment that would prevent her from performing her job…. These symptoms should not prevent her from performing her job." R00616.

20. On March 18, 2014, LLACOB sent a letter to Ms. Anderson denying her application for LTD benefits. R00593-94. The letter indicated that LLACOB had reviewed Ms. Anderson's medical records, including the above. *Id.* The letter stated, "[y]our symptoms were subjective in nature, and there are no objective findings of a neurological impairment that would prevent you from performing your job…. Based on

this information, you do not meet Liberty Mutual's plan definition of disability, and I must deny your claim." R00594.

21. On September 2, 2014, Ms. Anderson submitted an appeal to LLACOB. R00343-00518. The appeal included over 100 pages of exhibits documenting Ms. Anderson's medical record. These exhibits included, *inter alia*, a declaration of Ms. Anderson stating that her work required her to use a computer at least 75% of her day, that using a computer "often triggers my dizziness," and that she is "presently able to use a computer on a very limited basis." R00408. The appeal also included a declaration of a Dr. Alan Langman diagnosing Ms. Anderson with "disequilibrium, ICD-9-CM Diagnosis Code 780.4," and detailing her symptoms consistent with the factual findings above. R00410-14. Dr. Langman states, "[b]ecause the relationship between her vision and her vestibular system is abnormal, overstimulation of Ms. Anderson's eyes cause her disequilibrium to increase. Accordingly, her symptoms worsen if she is moving… if she tries to use a computer, if she reads, or is exposed to bright fluorescent lighting…. Due to her condition, Ms. Anderson is presently unable to hold a job which requires her to use a computer on a frequent basis." R00414. The appeal also included the above October 25, 2013, letter sent by Safeco to Dr. McClincy and her handwritten responses. R00512-14.

22. While Ms. Anderson's appeal of her LTD benefits denial was pending, LLACOB ordered surveillance of Ms. Anderson at her residence. R00175. The surveillance, conducted over eight days, resulted in 35 minutes of videotape. R00100-04; R00125-00137; R00174-86. Ms. Anderson was observed, without her knowledge, driving a car for short distances, running errands, and carrying groceries. R00174-86. The Court finds that the activities Plaintiff was observed doing while under surveillance were

consistent with her statements in the January 2, 2014, Activities Questionnaire and consistent with the statements of Dr. Langman.

23. As part of the appeal process, LLACOB retained Suzanne Galli, M.D., to review Plaintiff's medical records. R00110-14. On November 26, 2014, Dr. Galli agreed with Dr. Langman's diagnosis of disequilibrium and with his statement that no further vestibular testing was necessary. R00112-13. Dr. Galli stated that the medical records "validate that there are vestibular issues." R00113. Dr. Galli described the symptoms as "episodic" and that it was "not documented that this patient is completely incapacitated by her symptoms." *Id.*

24. As part of the appeal process, LLACOB scheduled an independent medical exam of Ms. Anderson, which took place on January 7, 2015. R00084. This exam was conducted by John Rockwell, M.D. R00087. Dr. Rockwell's report states that he reviewed "an incredibly extensive amount" of Ms. Anderson's medical records. R00085. Dr. Rockwell conducted a simple physical exam of Ms. Anderson and asked her questions about her condition. R00086-87. Due to foot surgery, Ms. Anderson appeared for the exam in a wheelchair. R00087. At the time of the exam, Ms. Anderson was not experiencing disequilibrium or vertigo. *Id.*

25. In his report, Dr. Rockwell was apparently asked specific questions provided by LLACOB, including "…are the claimant's subjective complaints (frequency & severity) substantiated by the medical evidence provided and your evaluation/review?" *Id*. Dr. Rockwell responded, "The problem in this situation is that the claimant's complaints of vertigo and dysequilibrium are totally 100% subjective in nature." *Id.* Dr. Rockwell opined, "It has been my experience in the practice of otolaryngology of over 30 years that even in the worst situations patients who have intermittent vertigo and vestibular

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANTS' CROSS
MOTION FOR JUDGMENT UNDER FRCP 52- 10

disorders for the most part lead full and productive lives…. Certainly an individual with some sort of so-called vestibular disorder could for the most part work day to day in any sort of office setting." *Id.* Dr. Rockwell described Ms. Anderson as "an otherwise healthy 34-year-old female." *Id.* When asked to specifically address "computer use," Dr. Rockwell stated "I cannot see any situation from a vestibular standpoint… where some sort of sedentary capacity or computer use would cause any sort of issues…. I have great problems and totally disagree with any sort of limitations on this claimant when it comes to her ability to work in an office sedentary situation and work on a computer." R00088. Dr. Rockwell also states "I have absolutely no issues with any of [Ms. Anderson's] prior treatment…" *Id.* The Court finds Dr. Rockwell's opinions inconsistent with Ms. Anderson's prior medical record.

26. On January 28, 2015, LLACOB denied Ms. Anderson's appeal of LTD benefits, relying on the reports from Dr. Rockwell, Dr. Galli, and the surveillance of Ms. Anderson. R00076-83. This civil action followed.

### IV.     CONCLUSIONS OF LAW

**A. Standard under ERISA**

1. ERISA provides that a qualifying ERISA plan "participant" may bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B); *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 108, 128 S. Ct. 2343, 171 L. Ed. 2d 299 (2008) (ERISA "permits a person denied benefits under an employee benefit plan to challenge that denial in federal court."). The Court finds that Plaintiff is a qualified participant.

2. As discussed above, ERISA does not set forth the appropriate standard of review for actions challenging benefit eligibility determinations. *Firestone*, 489 U.S. at 109. The parties, however, have stipulated to *de novo* review. Dkt. ##22-1 at 14; 24 at 5. The Court accepts the parties' stipulation and reviews the record *de novo*. *See Rorabaugh*, 321 F. App'x at 709 (court may accept parties stipulation to *de novo* review). "When conducting a *de novo* review of the record, the court does not give deference to the claim administrator's decision, but rather determines in the first instance if the claimant has adequately established that he or she is disabled under the terms of the plan." *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1295-96 (9th Cir. 2010). The administrator's "evaluation of the evidence is not accorded any deference or presumption of correctness." *Perryman v Provident Life & Acc. Ins. Co.*, 690 F Supp 2d 917, 942 (D. Ariz. 2010). In reviewing the administrative record and other admissible evidence, the court "evaluates the persuasiveness of each party's case, which necessarily entails making reasonable inferences where appropriate." *Oldoerp v. Wells Fargo & Company Long Term Disability Plan*, 12 F.Supp.3d 1237, 1251 (N.D. Cal. 2014) (citing *Schramm v. CNA Fin. Corp. Insured Grp. Ben. Program,* 718 F. Supp. 2d 1151, 1162 (N.D. Cal. 2010)).

3. When a district court "reviews a plan administrator's decision under the *de novo* standard of review, the burden of proof is placed on the claimant." *Id.* at 1294; *see also Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) (the claimant "bears the burden of proving his entitlement to contractual benefits").

**B. Ms. Anderson is Disabled under the Plan**

4. The parties agree that Ms. Anderson was covered under the LTD Plan. Dkt. #23 at 1. At issue is whether Ms. Anderson's condition qualifies as a disability under the Plan.

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANTS' CROSS
MOTION FOR JUDGMENT UNDER FRCP 52- 12

The Plan does not require Ms. Anderson be completely incapacitated or that she have a permanent disability. The Plan does not discuss intermittent disability or provide a threshold frequency of disabling attacks. Instead, Ms. Anderson will qualify as disabled under the Plan if she can establish that she is unable to perform, as a result of illness or disease, the responsibilities that she is normally required to perform in her job, which cannot otherwise be reasonably eliminated or modified. R00007; R00009-10. The parties do not dispute that Ms. Anderson has met the other requirements of the Plan.

5. It is clear from the record that Ms. Anderson's job required her to use a computer on a near constant basis. Defendants have not offered evidence, and it is hard to imagine, how Ms. Anderson could perform her job without using a computer. Doctors who personally examined Ms. Anderson, including Dr. McClincy and Dr. Langman, concluded that Ms. Anderson's condition made it impossible to for her to reliably perform this essential job function. R00414; R00513-14. This evidence alone is persuasive that Ms. Anderson is disabled under the Plan. *See Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 676-79 (9th Cir. 2011) (evidence showing that the doctors who personally examined the claimant concluded that he was disabled, even though insurance company's non-examining physicians found otherwise, supported finding that the claimant was disabled under terms of the plan).

6. Defendants contend that Ms. Anderson's symptoms are purely subjective.[2] However, Defendants provide no legal justification for denying benefits based on the absence of objective symptoms. Vertigo, fatigue, and nausea are subjective experiences that cannot be easily measured by an objective standard, but that does not mean such

---

[2] However, Defendants acknowledge that "objective testing supported [Ms. Anderson's] claims of vestibular dysfunction, but found that there was insufficient evidence that this dysfunction actually resulted in restrictions and limitations that would preclude plaintiff from performing her own occupation." Dkt. #23 at 2.

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANTS' CROSS
MOTION FOR JUDGMENT UNDER FRCP 52- 13

symptoms should be discounted or disbelieved. *See Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 678 (9th Cir. 2011) (a disability insurer cannot "condition coverage on proof by objective indicators such as blood tests where the condition is recognized yet no such proof is possible"); *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 872-73 (9th Cir. 2008); *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 486 (2d Cir. 2013) ("…[S]ubjective complaints of disabling conditions are not merely evidence of a disability, but are an important factor to be considered in determining disability."). As stated in the conclusions of law above, it is clear that Ms. Anderson's symptoms prevent her from doing her job. Defendants provide no credible reason to disbelieve the reports of Plaintiff or her medical providers regarding her symptoms and their disabling consequences.[3]

7. Defendants argue that the surveillance evidence brings into question whether Ms. Anderson "actually experiences the severe dizziness, fatigue and nausea which she claims prevent her from performing her occupation."[4] Dkt. #23 at 17. To the contrary, the surveillance evidence neither proves nor disproves Ms. Anderson's claims of intermittent vertigo, fatigue, nausea, disequilibrium, and related issues which prevent her from doing her job. LLACOB acknowledges that the surveillance did not include

---

[3] Defendants go to great length to list doctor visits where Ms. Anderson was not suffering from vertigo, fatigue, nausea, or disequilibrium *at the time of the appointment*. Dkt. #23 at 12-13. The absence of intermittent symptoms at any one time does not prove they do not exist on a regular basis. The Court does not find this evidence outweighs the credible assertions of Ms. Anderson and her medical providers as to the existence of her symptoms, including several contemporaneous observations of her symptoms. *See* Dkt. #26 at 3-5.

[4] The Court notes that LLACOB obtained surveillance of Ms. Anderson after she submitted her final appeal for LTD benefits and relied upon that surveillance as a basis for denying her appeal, when Ms. Anderson had no opportunity to review and respond to that surveillance. This was a procedural violation contravening the purpose of ERISA. *See* 29 U.S.C. § 1133(1); 29 U.S.C. 1133(2); *Wong v. Aetna Life Ins. Co.*, 51 F.Supp.3d 951, 967 (S.D. Cal. 2014); *Prado v. Allied Domecq Spirits & Wine Grp. Disability Income Policy*, 800 F. Supp.2d 1077, 1097-98 (N.D. Cal. 2011).

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANTS' CROSS
MOTION FOR JUDGMENT UNDER FRCP 52- 14

footage of Ms. Anderson using a computer. R00082. Nor does it catch Ms. Anderson in a lie, as implied by Defendants in their briefing at Dkt. #23 at 16.[5]

8. Given the Plan's definitions of "Disabled," "Sickness," and "Material and Substantial Duties," listed in the Findings of Fact, and based solely on the administrative record,[6] the Court finds that Plaintiff was disabled within the meaning of the Plan *at least* during the time period in question—from her first application for STD benefits through the end of the administrative record. Without a change in Ms. Anderson's medical condition, there is no reason to conclude that she will not continue to be disabled as defined in the Plan.

9. The Court does not have sufficient evidence or argument before it to determine whether Ms. Anderson is "unable to perform, with reasonable continuity, the Material and Substantial Duties of…. any occupation that the [employee] is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity." R00004-05; R00007. Nor has LLACOB addressed this specific issue, as it failed to find Ms. Anderson met any definition of disability under the Plan. *See* R00082. The Court will therefore remand to LLACOB the issue of extending benefits to Ms. Anderson beyond the 18-month period prescribed for "own occupation" benefits under the Plan.

10. A district court may award prejudgment interest in ERISA cases to compensate a plaintiff for the loss she incurred as a result of the defendant's nonpayment of benefits. *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir.2001). Whether to

---

[5] Defendants imply that Plaintiff is lying about her symptoms by stating, "[s]ince plaintiff reported… that she 'frequently' tripped or stumbled, one would expect to see her stumble, rely on handholds, or walk with a weaving or tentative gait;" and "…despite her assertion on many occasions that fluorescent lights and driving can 'trigger' her symptoms, she drives herself to shop at Rite Aid, a store not known for its subtle lighting." Dkt. #23 at 16.

[6] Because the Court can rule in favor of Plaintiff based solely on the administrative record, it is not necessary to consider whether statements from Dr. Langman and the Plaintiff outside the administrative record, Dkt. ##19 and 20, are properly within the scope of the Court's review.

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANTS' CROSS
MOTION FOR JUDGMENT UNDER FRCP 52- 15

award prejudgment interest "is a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*, 750 F.2d 1458, 1465 (9th Cir.1985) (quoting *Wessel v. Buhler*, 437 F.2d 279, 284 (9th Cir.1971)).  Generally, "the interest rate prescribed for post-judgment interest under 28 U.S.C. § 1961 is appropriate for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." *Rabbat*, 894 F. Supp. 2d at 1323 (quoting *Blankenship v. Liberty Life Assur. Co. of Boston*, 486 F.3d 620, 628 (9th Cir. 2007)).

11. Plaintiff is entitled to receive long-term disability benefits from the beginning of her eligibility through the 18-month period prescribed in the Plan, to recover pre-judgment interest on those unpaid benefits consistent with the rate prescribed for post-judgment interest under 28 U.S.C. § 1961, and to recover her attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

## V.   CONCLUSION

Having reviewed Plaintiff's and Defendants' cross motions, the responses in opposition thereto and replies in support thereof, the Court hereby FINDS and ORDERS:

1) Defendants' Motion for Judgment under Federal Rule of Civil Procedure 52 (Dkt. #24) is DENIED.

2) Plaintiff's Motion for Judgment under Federal Rule of Civil Procedure 52 (Dkt. #15) is GRANTED IN PART.  Plaintiff is entitled to receive long-term disability benefits from the beginning of her eligibility through the 18-month period prescribed in the Plan, to recover pre-judgment interest on those unpaid benefits, and to recover attorney's fees and costs.  However, the Court REMANDS to

LLACOB the issue of extending benefits to Ms. Anderson beyond the 18-month period prescribed for own occupation benefits under the Plan.

3) <u>No later than ten (10) days from the date of this Order</u>, Plaintiff shall file a Motion for Attorney's Fees, noting it for consideration pursuant to this Court's Local Rules. The motion shall be supported by documentary evidence reflecting the amount of fees sought, and shall include argument as to the authority upon which such fees may be granted and why such fees are reasonable. Defendants shall file any Response in accordance with the Local Rules, and Plaintiff may file a Reply in accordance with the same.

4) This matter is now CLOSED.

DATED this 27 day of July, 2015.

                 RICARDO S. MARTINEZ
                 UNITED STATES DISTRICT JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR JUDGMENT
UNDER FRCP 52 AND DENYING DEFENDANTS' CROSS
MOTION FOR JUDGMENT UNDER FRCP 52- 17